**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*

        *-and-*

**REESE LLP**
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
*mreese@reesellp.com*

United States District Court
Southern District of New York                                  7:19-cv-10102

| | |
|---|---|
| Sharon Dashnau, individually and on behalf of all others similarly situated, | |
| Plaintiff | Class Action Complaint |
| - against - | |
| Unilever Manufacturing (US), Inc., | |
| Defendant | |

        Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining

to plaintiff, which are based on personal knowledge: Orange

        1.      Unilever Manufacturing (US), Inc. ("defendant") manufactures, distributes, markets,

labels and sells ice cream products purporting to contain flavor from their natural characterizing

flavor, vanilla under their Magnum brand ("Products").

        2.      The Products are a high-end European ice cream product that consists of ice cream

flavors enrobed and/or containing chocolate pieces, sold in tubs (14.8 OZ) and bars (2 and 3 OZ),

labeled as containing vanilla ice cream, available to consumers nationwide from brick and mortar stores, online stores and/or defendant's website.

3.    An example of one of the Products is presented below.

<u>Double Chocolate Vanilla</u>

*Vanilla Bean Ice Cream Dipped in a Chocolatey Coating, Chocolatey Sauce and Milk Chocolate*



4.    Though the arguments and facts presented here are directed towards the Double Chocolate Vanilla Product, the misleading representations occur across the product line and include but are not limited to: Double Caramel – Vanilla Bean Ice Cream Dipped in a Chocolatey Coating, Caramel Sauce and Milk Chocolate, White Chocolate Vanilla Ice Cream, Double Sea Salt Caramel Ice Cream with Vanilla Ice Cream, Dark 60% Cacao (Vanilla Bean Ice Cream), Mini Classic and Mini Double Caramel (both with vanilla bean).

I.    Ice Cream Products

5.     Ice cream is a year-round treat enjoyed by 96% of Americans.[1]

6.     Its popularity is attributed "to the perfect combination of elements – sugar, fat, frozen water, and air – that make up the mouthwatering concoction."[2]

7.     Ice cream is defined by a minimum of 10 percent milkfat, weighing no less than 4.5 pounds to the gallon and containing less than 1.4 % egg yolk solids.[3]

8.     When ice cream has 1.4% or more egg yolk solids as part of its base, it is referred to as "french ice cream."[4]

9.     According to ice cream lore, Thomas Jefferson supposedly "invented" vanilla ice cream when he learned of vanilla during his ambassadorship to France and upon returning to Monticello, mixed this bottle with the frozen milk and cream dessert he was fond of consuming while drafting the Declaration of Independence.[5]

10.     President Jefferson is even said to have imported vanilla so this new frozen dairy treat could be served at his inaugural ball.

II.     Vanilla is Perennial Favorite Ice Cream Flavor

11.     Vanilla is the consistent number one flavor for 28% of consumers, confirmed two groups who would know – the International Dairy Foods Association (IDFA) (ice cream producers) and National Ice Cream Retailers Association (ice cream parlors).

12.     The reasons for vanilla's staying power are "not only because it is creamy and

---

[1] Arwa Mahdawi, The big scoop: America's favorite ice-cream flavor, revealed, The Guardian, July 11, 2018
[2] Vox Creative, The Reason You Love Ice Cream So Much Is Simple: Science, Eater.com, October 12, 2017.
[3] 21 C.F.R. § 135.110(a)(2) ("Ice cream and frozen custard.").
[4] 21 C.F.R. § 135.110(f)(1).
[5] Thomas Jefferson's Handwritten Vanilla Ice Cream Recipe, Open Culture, July 13, 2014; Thomas Jefferson's Vanilla Ice Cream, Taste of Home, June-July 2012; Thomas Jefferson's Original Vanilla Ice Cream Recipe, Jefferson Papers, Library of Congress; Anna Berkes, "Ice Cream" in Thomas Jefferson Encyclopedia, Thomas Jefferson Foundation, Inc., Monticello.org, June 28, 2013

delicious, but also because of its ability to enhance so many other desserts and treats."[6]

13.     By some estimates, approximately two-thirds of "all ice cream eaten is either vanilla or vanilla with something stirred into it, like chocolate chips."[7]

14.     The applications of vanilla ice cream include its centerpiece between chocolate wafers ("sandwich"), enrobed in chocolate on a stick ("bar"), topping a warm slice of fresh-baked pie ("à la Mode"), drizzled with hot fudge and sprinkled with crushed nuts and topped by a maraschino cherry ("sundae") or dunked in a cold frothy glass of root beer ("float").[8]

III.     Vanilla is Constantly Subject to Efforts at Imitation Due to High Demand

15.     The tropical orchid commonly known as "vanilla" does not  develop its prized flavor on its own.

16.     By law, vanilla refers to the "the total sapid and odorous principles extractable from one-unit weight of vanilla beans."[9]

17.     Shortly after the passage of the Pure Food and Drugs Act of 1906, E. M. Chace, Assistant Chief of the Foods Division of the U.S. Department of Agriculture's Bureau of Chemistry, noted "There is at least three times as much vanilla consumed [in the United States] as all other flavors together."[10]

18.     This demand could not be met by the natural sources of vanilla, leading manufacturers to devise methods to imitate vanilla's flavor and appearance.

---

[6]Press Release, IDFA, Vanilla Reigns Supreme; Chocolate Flavors Dominate in Top Five Ice Cream Favorites Among Americans, July 1, 2018
[7]Bill Daley (the other one), Which vanilla ice cream is the cream of the crop? We taste test 12 top brands, Chicago Tribune, July 18, 2018
[8] The True Wonders of Vanilla Ice Cream, FrozenDessertSupplies.com.
[9] 21 C.F.R. §169.3(c)
[10] E. M. Chace, "The Manufacture of Flavoring Extracts," Yearbook of the United States Department of Agriculture 1908 (Washington, DC: Government Printing Office, 1909) pp.333–42, 333 quoted in Nadia Berenstein,  "Making a global sensation: Vanilla flavor, synthetic chemistry, and the meanings of purity," History of Science 54.4 (2016): 399-424 at 399.

19.    Though the Pure Food and Drugs Act was enacted to "protect consumer health and prevent commercial fraud," this was but one episode in the perpetual struggle against those who have sought profit through sale of imitation and lower quality commodities, dressed up as the genuine articles.[11]

20.    Daily headlines tell a story of a "resurgent" global threat of "food fraud" – from olive oil made from cottonseeds to the horsemeat scandal in the European Union.[12]

21.    While "food fraud" has no agreed-upon definition, its typologies encompass an ever-expanding, often overlapping range of techniques with one common goal: giving consumers less than what they bargained for.

22.    Vanilla is considered a "high-risk [for food fraud] product because of the multiple market impact factors such as natural disasters in the source regions, unstable production, wide variability of quality and value of vanilla flavorings," second only to saffron in price.[13]

23.    The efforts at imitating vanilla offers a lens to the types of food fraud regularly employed across the spectrum of valuable commodities in today's interconnected world.[14]

| Type of Food Fraud | Application to Vanilla |
|---|---|
| ➢ Cheating on analytical tests by containing markers specifically tested for | • Manipulation of the carbon isotope ratios to produce synthetic vanillin with similar carbon isotope composition to natural vanilla |
| ➢ Cheating by giving consumers | • Ground vanilla beans and/or seeds to provide visual |

---

[11] Berenstein, 412; some of the earliest recorded examples of food fraud include unscrupulous Roman merchants who sweetened wine with lead.

[12] Jenny Eagle, 'Today's complex, fragmented, global food supply chains have led to an increase in food fraud', FoodNavigator.com, Feb. 20, 2019; M. Dourado et al., Do we really know what's in our plate?. Annals of Medicine, 51(sup1), 179-179 (May 2019); Aline Wisniewski et al., "How to tackle food fraud in official food control authorities in Germany." Journal of Consumer Protection and Food Safety: 1-10. June 11, 2019.

[13] Société Générale de Surveillance SA, ("SGS "), Authenticity Testing of Vanilla Flavors – Alignment Between Source Material, Claims and Regulation, May 2019.

[14] Kathleen Wybourn, DNV GL, Understanding Food Fraud and Mitigation Strategies, PowerPoint Presentation, Mar. 16, 2016.

the impression the food or ingredient is present in greater amounts and/or higher quality form than it actually contains

appeal as "specks" so consumer thinks they are a result of the product containing real vanilla bean, when the ground beans have been exhausted of flavor, and any vanilla flavor tasted may not even be due to the presence of real vanilla

➢ Substitution or Replacement a food product/ingredient with an alternate food product/ingredient of lower quality

- Tonka beans, which are banned from entry to the United States, instead of vanilla beans
- Coumarin, phytochemical found in Tonka beans, to increase the vanilla flavor perception

➢ Coloring agents to produce a more attractive color

- Caramel in vanilla extracts to darken the substance's color additives like caramel to enhance the hue of an imitation vanilla so it more closely resembles real vanilla[15]
- Annatto and turmeric in dairy products purporting to be flavored with vanilla, to darken the color to better resemble the hue of rich, yellow butter

➢ Addition of less expensive substitute ingredient to mimic flavor of more valuable component

- Synthetically produced ethyl vanillin, derived from wood pulp, tree bark or coal tar

➢ Ingredient list deception[16]

- Subtle, yet deliberate misidentification and obfuscation of a product's components and qualities as they appear on the ingredient list – "ground vanilla beans" as containing actual vanilla flavor when they are devoid of any naturally occurring vanilla flavor

---

[15] Renée Johnson, "Food fraud and economically motivated adulteration of food and food ingredients." Congressional Research Service R43358, January 10, 2014.
[16] Recent example of this would be "evaporated cane juice" as a more healthful sounding term to consumers to identify sugar

6

- "Vanilla With Other Natural Flavor"
  - sold by more knowledgeable flavor suppliers to less knowledgeable yet sophisticated manufacturers who don't (and can't) ask questions
  - flavor companies say "'trust us, you can call this 'natural flavor' and label the product as 'vanilla'"
    - cite "proprietary" formulations and "trade secrets"
  - flavor suppliers fail to disclose:
    - they have "boosted" the miniscule amount of vanilla in Vanilla WONF with a hearty dose of vanillin
    - vanilla combined with vanillin even if it contains "other natural flavors" still required to disclose "artificial flavor" to prevent consumer deception as to vanilla content
    - Manufacturers turn blind eye to flavor suppliers' calculated silence because consumers pay more for products without the term "flavored" and with the terms "vanilla" and "natural"

➢ Diluting/Extending

- Combination with flavoring substances such as propenyl guaethol ("Vanitrope"), a "flavoring agent [, also] unconnected to vanilla beans or vanillin, but unmistakably producing the sensation of vanilla"[17]

- "Spiking" or "fortification" of vanilla through addition of natural flavors including vanillin, which simulates vanilla taste but obtained from tree bark

---

[17] Berenstein, 423.

➢ Compounding – "to mix flavor materials together at a special ratio in which they [sic] compliment each other to give the desirable aroma and taste."[18]

- "Flavor Compounding Is a Skilled Art and Science Designed to Produce a Flavor Perception That Seems to be Authentic or at Least Derived from a Natural Source"[19]

- Have things changed?
  o **1911:** The "public should clearly understand" that flavor combinations such as "vanilla and vanillin…vanilla flavor compound," etc., are not "vanilla [extract] no matter what claims, explanations or formulas are given on the label."[20]
  o **2018:** According to the head of "taste solutions" at global conglomerate Kerry, "The challenge is to find a vanilla flavor that matches the taste of pure vanilla natural extracts."[21]
    ▪ The solution?
    ▪ "[G]et creative" and "build a compounded vanilla flavor with other natural flavors"
    ▪ "This solution can provide the same vanilla taste expectation while requiring a smaller quantity of vanilla beans. The result is a greater consistency in pricing, availability and quality."

IV. The Products are Misleading Because they Lack Sufficient Vanilla and Contain Non-Vanilla Flavoring

---

[18] Chee-Teck Tan, "Physical Chemistry in Flavor Products Preparation: An Overview" in Flavor Technology, ACS Symposium Series, Vol. 610 1995. 1-17.
[19] Charles Zapsalis et al., Food chemistry and nutritional biochemistry. Wiley, 1985, p. 611.
[20] Kansas State Board of Health, Bulletin, Vol. 7, 1911, p. 168.
[21] Donna Berry, Understanding the limitations of natural flavors, BakingBusiness.com, Jan. 16, 2018.

24.    The front label statements of "Double Chocolate Vanilla" and "Vanilla Bean Ice Cream Dipped in a Chocolatey Coating, Chocolatey Sauce and Milk Chocolate" are understood by consumers to identify a product where vanilla is (1) the characterizing flavor, (2) contained in a sufficient amount to flavor the product and (3) the exclusive source of flavor.



A.    Deciphering the Ice Cream Components from Ingredient List

25.    The ingredient lists do not list the chocolate components separate from the ice cream components making it more complicated to identify the ice cream ingredients.

**Ingredients:** Milk, Milk Chocolate [Sugar, Chocolate, Cocoa
Butter, Milk, Milkfat, PGPR (Emulsifier) And Soy Lecithin
(Emulsifier), Vanilla Extract], Chocolatey Fudge [Water, Sugar,
Corn Syrup, Cocoa Processed With Alkali, Nonfat Dry Milk,
Coconut Oil, Modified Corn Starch, Mono And Diglycerides,
Carrageenan, Potassium Sorbate (Used To Protect Quality)],
Cream, Chocolatey Coating [Coconut Oil, Sugar, Cocoa, Soy
Lecithin, Vanilla Extract], Sugar, Corn Syrup, Contains 1 Percent
Of The Following: Whey, Mono And Diglycerides, Locust Bean
Gum, Water, Guar Gum, Natural Flavor, Carrageenan, Caramel
And Annatto Extract (Color).

B. Combination Ingredients

26.    To determine the ice cream ingredients, it is necessary to remove the non-ice cream

ingredients – the chocolate and coatings.

27.    Though it is required to list ingredients in order of their predominance by weight,

this is subject to certain exceptions.

28.    One exception applies where an "ingredient [which itself] contains two or more

ingredients and which has an established common or usual name, conforms to a standard

established pursuant to the Meat Inspection or Poultry Products Inspection Acts by the U.S.

Department of Agriculture, or conforms to a definition and standard of identity established

pursuant to section 401 of the Federal Food, Drug, and Cosmetic Act."[22]

29.    The Product's ingredients which are labeled in this way are highlighted below.

> **Ingredients:** Milk, Milk Chocolate [Sugar, Chocolate, Cocoa Butter, Milk, Milkfat, PGPR (Emulsifier) And Soy Lecithin (Emulsifier), Vanilla Extract], Chocolatey Fudge [Water, Sugar, Corn Syrup, Cocoa Processed With Alkali, Nonfat Dry Milk, Coconut Oil, Modified Corn Starch, Mono And Diglycerides, Carrageenan, Potassium Sorbate (Used To Protect Quality)], Cream, Chocolatey Coating [Coconut Oil, Sugar, Cocoa, Soy Lecithin, Vanilla Extract], Sugar, Corn Syrup, Contains 1 Percent Of The Following: Whey, Mono And Diglycerides, Locust Bean Gum, Water, Guar Gum, Natural Flavor, Carrageenan, Caramel And Annatto Extract (Color).

30.    Presented in table form:

| Combination Ingredients | Sub-Ingredients |
|---|---|
| Milk Chocolate | [Sugar, Chocolate, Cocoa Butter, Milk, Milkfat, PGPR (Emulsifier) And Soy Lecithin (Emulsifier), Vanilla Extract] |
| Chocolatey Fudge | [Water, Sugar, Corn Syrup, Cocoa Processed With Alkali, Nonfat Dry Milk, Coconut Oil, Modified Corn Starch, Mono And Diglycerides, Carrageenan, Potassium Sorbate (Used To Protect Quality)], |
| Chocolatey Coating | [Coconut Oil, Sugar, Cocoa, Soy Lecithin, Vanilla Extract], |

31.    Milk chocolate has a standard of identity and contains two or more component ingredients.[23]

32.    The ingredients used for milk chocolate are listed parenthetically, in descending order of predominance by weight, after the name of the multi-component ingredient, milk chocolate.[24]

---

[22] 21 C.F.R. § 101.4(b)(2)(i)-(ii).
[23] 21 C.F.R. § 163.130.
[24] 21 C.F.R. § 101.4(b)(2)(i) ("By declaring the established common or usual name of the ingredient followed by a parenthetical listing of all ingredients contained therein in descending order of predominance except that, if the ingredient is a food subject to a definition and standard of identity established in subchapter B of this chapter that has specific labeling provisions for optional ingredients, optional ingredients may be declared within the parenthetical listing in accordance with those provisions.")

33.     "Chocalatey Fudge" and "Chocolatey Coating" differ from milk chocolate because they are not foods for which a standard of identity has been established.

34.     However, it is plausible to argue that the names of these two foods are their common or usual name and have "be[en] established by common usage."[25]

35.     Fudge is commonly understood as a semi-solid sugar candy made by mixing sugar, condensed milk and a lipid (butter or vegetable oils).

36.     Fudge is most often chocolate flavored hence the name "chocolatey fudge."

37.     An ingredient described as a compound coating differs from chocolate because it contains alternate vegetable fats in place of cocoa butter.[26]

38.     After the combination ingredients are removed, the remaining ingredients, in descending order of predominance by weight, are the ingredients which comprise the vanilla bean ice cream:

> **Ingredients:** Milk, Cream, Sugar, Corn Syrup, *Contains 1 Percent Of The Following*: Whey, Mono And Diglycerides, Locust Bean Gum, Water, Guar Gum, Natural Flavor, Carrageenan, Caramel And Annatto Extract (Color).

39.     The Products' ingredient lists reveal the vanilla bean ice cream is not flavored only by vanilla beans, but contains flavors from non-vanilla bean sources.

40.     The above-listed ingredients would be the ingredients of the vanilla bean ice cream if the ice cream component was labeled separately.

41.     Where an ice cream product purports to have a characterizing flavor of vanilla without any qualification but the ingredient list identifies "natural flavor" as the exclusive

---

[25] 21 C.F.R. § 102.5(d) ("A common or usual name of a food may be established by common usage or by establishment of a regulation in subpart B of this part, in part 104 of this chapter, in a standard of identity, or in other regulations in this chapter.").
[26] Wikipedia contributors, "Compound chocolate," Wikipedia, The Free Encyclopedia.

flavoring ingredient or as one of the flavoring ingredients, it means (1) the flavoring in the food is not exclusively vanilla and (2) the product contains non-vanilla flavors obtained from natural sources other than vanilla beans and made through natural processes.[27]

V.      What Consumers Expect from Ice Cream Labeling

   A.   Ice Cream Flavor Designation Requirements are Distinct from Non-Ice Cream Flavor Labeling

   42.    The ice cream flavor regulations are specific to the nature of this food and were established decades before general flavoring regulations for non-ice cream foods. Compare 21 C.F.R. § 135.110(f)(2)-(5) with 21 C.F.R. § 101.22.

   43.    Under 21 C.F.R. § 101.22(a)(3), "natural flavor" is defined generally as "the essential oil, oleoresin, essence or extractive…which contains the flavoring constituents" from a natural source such as plant material and can refer to combinations of natural flavors.

   44.    "Artificial flavor" in contrast is any substance whose function is to impart flavor that is not derived from a natural source.  See 21 C.F.R. § 101.22(a)(1).

   45.    In the context of ice cream, "natural flavor" has a different meaning and usage and refers *only* to the natural *characterizing* flavor.

   46.    For example, in vanilla or strawberry ice cream, the only "natural flavor" is derived from vanilla or strawberries, because these ingredients characterize the ice cream product.[28]

   47.    "Artificial flavor" in ice cream means (1) any flavor not derived from the

---

[27] These natural processes may include fermentation but when high heat and high pressure is used, the FDA considers this to be a synthetic method of obtaining a flavor.  This "natural" process of high heat and high pressure is used to obtain vanillin from the non-vanilla material of eugenol, the main component of clove oil. Vanillin derived from eugenol through a high heat and high pressure process is not considered "natural vanillin" which makes its addition to the "WONF" part of "Vanilla WONF" misleading. Further, it is misleading and unlawful to use any type of vanillin with vanilla and not explicitly disclose that vanillin is considered an artificial flavor because this flavor was created to "boost" a real natural flavor, vanilla.

[28] *See* 21 C.F.R. §135.110(f)(2)(i) (no provision for natural flavors other than the "[natural] characterizing flavor").

characterizing flavor, even if obtained from natural sources and made through natural processes.

B. <u>Early Ice Cream Flavoring Debate is "Stirring"</u>

48.    One of the earliest debates in the 1930s with respect to ice cream flavor labeling was

over the use of vanillin, the main flavoring compound in vanilla.

49.    The vanillin promoted and used by industry was synthesized from clove oil, a natural

source material.

50.    Why, the lobbyists, told Congress, could they not label their products as "vanilla ice

cream" if it contained vanillin from sources other than vanilla beans?

51.    Congressmen E.A. Kenny of New Jersey and Virgil Chapman of Kentucky inquired

of the ice cream lobby's representative, Mr. Schmidt:

> Mr. Kenney:   Do you not think, though, Mr. Schmidt, that if you label it vanilla
> ice cream, it ought to be vanilla; and if it is made with vanillin
> extracted from oil of cloves, you ought to label it manufactured
> with such vanillin?
>
> Mr. Schmidt:   Well, we, of course, do not think so. That is why we are here
> making our protest. We think, after all, the consuming public is
> accustomed to accepting as vanilla artificial vanillas.
>
> Mr. Kenney:   *We agree that Barnum educated us along that line a long time ago.*
> (emphasis added)
>
> ……………
>
> Mr. Chapman: I do think that if it is chocolate it ought to be labeled "chocolate";
> and if it is flavored with vanillin made from oil of cloves, it ought
> to be labeled to show that it is flavored with vanillin made from oil
> of cloves; and if it is flavored with vanilla, it ought to be labeled
> "vanilla"; and if it is " flavored with lemon, it ought to be labeled
>  lemon "; and if it is cherry, it ought to be labeled "cherry."

52.    Later in the hearing, Mr. Chapman and another industry representative engaged over

the proper declaration of flavor for ice cream:

> Mr. Chapman:   Do you make raspberry?

14

Mr. Hibben.         Yes.

Mr. Chapman.      And you put that on the label?

Mr. Hibben.         We say "raspberry ice cream."

Mr. Chapman.      And if it is peach, you put that on the label?

Mr. Hibben.         It Is peach ice cream; yes.

Mr. Chapman.      And If you call it vanilla, what do you put on?

Mr. Hibben:         We put "vanilla ice cream" on our labels. That Is what we want to continue to do. We want to put vanilla on those labels.

Mr. Chapman.      But you say you put in It oil of cloves instead of vanilla.

Mr. Hibben.         We do not use cloves. We use vanillin derived from the oil of cloves.

Mr. Chapman.      If you put out strawberry ice-cream, you would not want to use raspberry to make it, would you?

Mr. Hibben.         No; but we use vanillin, which is an ingredient of the vanilla bean and, its true to name.

Mr. Chapman.      Is it an extract from the vanilla bean?

Mr. Hibben.         It is both. It is taken both from the eugenol and the vanilla bean and is the same product. If you were a chemist you could not tell the difference, and if you were a doctor, you would say that one is just as harmless as the other.

Mr. Chapman:      I do not object to buying artificial vanilla ice cream if it is pure, but if it is artificial. I would like to know what I am getting.

53.    The above highlighted portions reveal that even before ice cream standards were established, the central question for ice cream flavoring was whether the flavor source was entirely derived only from the characterizing flavor.

54.    Representative Chapman's comments about the use of raspberries to flavor strawberry ice cream and vanillin from clove oil to flavor vanilla ice cream succinctly summed up

15

what would become the three-category flavor labeling system for ice cream.

55.    One of the reasons for these different requirements is because ice cream is a high quality and expensive product made mainly from milk and cream.

VI.    Ice Cream Flavor Categories

56.    To prevent deception of consumers, the flavor designation for ice cream is divided into three categories.

57.    The categories are based on the:

(i)    use of natural and various combinations of natural and artificial flavors that characterize this food;

(ii)    source(s) of the characterizing flavor;

(iii)    flavor which predominates;

(iv)    amount of each flavor component in the product; and

(v)    percent of the total flavor component represented by a flavor component.[29]

58.    Daphna Havkin-Frenkel, editor of the *Handbook of Vanilla Science and Technology*, summarized these three categories:

59.    This requirement is contained at 21 C.F.R. §135.110(f)(2)(i), which states that where an ice cream "contains no artificial flavor, the name on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., 'vanilla,' in letters not less than one-half the height of the letters used in the words 'ice cream'" and expressed in the following form:

["characterizing flavor"] + ["ice cream"] → "Vanilla Ice Cream" or "Strawberry Ice Cream." ("Category 1").

60.    This reading of the flavor requirements for ice cream is supported by (1) legislative

_____

[29] 21 C.F.R. § 135.110(f)(2)(i)-(iii); 21 C.F.R. § 135.110(f)(3)-(5).

16

history such as Congressional Hearings, (2) a re-discovered trove of official regulatory documents – letters, memoranda, advisory opinions – which are binding on industry and which have not been amended or revoked, (3) industry compliance with these requirements for over fifty years.

A. Category 2 Ice Cream

61.    If an ice cream contains a natural characterizing flavor (i.e., vanilla) and an artificial flavor simulating it, and if the natural flavor predominates, a non-misleading label would be expressed in the following form:

> ["characterizing flavor"] + ["flavored"] + ["ice cream"] → "Vanilla Flavored Ice Cream" or "Peach Flavored Ice Cream." ("Category 2").

*See* 21 C.F.R. §135.110(f)(2)(ii).

B. Category 3 Ice Cream

62.    If an ice cream contains a natural characterizing flavor and an artificial flavor simulating it, and if the artificial flavor predominates, or if only artificial flavor is used, a non-misleading label would be expressed in the following form:

> ["artificial" or "artificially flavored"] + ["characterizing flavor"] + ["ice cream"] → "Artificially Flavored Vanilla Ice Cream" or "Artificially Flavored Strawberry Ice Cream." ("Category 3").

*See* 21 C.F.R. §135.110(f)(2)(iii).

VII.    Reasons Why "Natural Flavor" is not a Synonym for an Exclusively Vanilla Ingredient

A. Standardized Food of Ice Cream is Required to Declare Ingredients by their Common or Usual Names Set by Standards of Identity

63.    The common or usual names of the exclusively vanilla ingredients include Vanilla Extract, Concentrated Vanilla Extract, Vanilla Flavoring and Concentrated Vanilla Flavoring, specified in the regulations for vanilla ingredients.  *See* 21 C.F.R. §§ 169.175 to 169.178.

64.    These exclusively vanilla ingredients – vanilla flavoring, vanilla extract, etc. – differ only in that the former is at least thirty-five (35) percent ethyl alcohol while the latter is less than

this amount.[30]

65.     Because ice cream is a standardized food and the vanilla ingredients are subject to their own standards of identity, the designation of these vanilla ingredients is controlled by 21 U.S.C. §343(g) – they are required to be specifically declared:[31]

>       A food shall be deemed to be misbranded –
>
>       (g) Representation as to definition and standard of identity
>
>       If it purports to be or is represented as a food for which a definition and standard of identity has been prescribed by regulations as provided by section 341 of this title, unless (1) it conforms to such definition and standard, and (2) its label bears the name of the food specified in the definition and standard, and, insofar as may be required by such regulations, the common names of optional ingredients (other than spices, flavoring, and coloring) present in such food.

66.     It is also a general requirement that all ingredients be listed by their common or usual name. See 21 C.F.R. § 101.4(a)(1).


B.   Ingredient List is Typically More Truthful than Product's Front Label Due to Less "Discretion" When it Comes to Accurately Declaring the Ingredients

67.     The Products are labeled as types of vanilla (bean) ice cream.

68.     It makes no logical sense and it is deceptive to "borrow" from different regulations for labeling ice cream.

69.     When confronted with the absence of a standalone vanilla ingredient on the ingredient list, defendant will illogically borrow from the general flavoring regulations and assert that vanilla extract "may be declared as ["spice",] 'natural flavor.'"  See 21 C.F.R. § 101.22(h)(1).

70.     Such a position disregards the different applicability of the two sets of regulations.

71.     It also is contrary to the ice cream requirements whereby the flavoring in a Category

---

[30] 21 C.F.R. §§ 169.175 (Vanilla extract.), 169.177 (Vanilla flavoring.); also concentrated versions of each of these.
[31] 21 U.S.C. § 343(g)(2) read with 21 C.F.R. § 135.110(f)(2)(i) and 21 C.F.R. §§ 169.175 – 169.178.

1 product only be derived from the characterizing flavor.

   C.  <u>Natural Flavor does not refer to the Standardized Vanilla-Vanillin Ingredients</u>

    72.   The vanilla standards reference three vanilla-vanillin combinations – Vanilla-vanillin extract, Vanilla-vanillin flavoring and Vanilla-vanillin powder.[32]

    73.   The standardized vanilla ingredients – vanilla extract, vanilla flavoring, concentrated vanilla flavoring, and vanilla powder – *could* be understood as complying with the requirements for "natural flavor" even though they are required to be designated by their common or usual names on the ingredient list.[33]

    74.   However, the "vanillin" referred to in the standardized combination ingredients is produced from non-vanilla bean materials, like wood pulp, coal tar and clove oil.

    75.   While vanillin is a main flavoring component of vanilla, only 1-2% of vanillin in commercial use is vanillin obtained from the vanilla plant.

    76.   This type of "natural vanillin" is rarely produced, which means that almost all vanillin is synthetically produced and has no connection to the vanilla bean.

    77.   The labeling and disclosure for a vanilla-vanillin combination ingredient would be controlled not by the general flavoring regulations but by the vanilla standards.

    78.   These ingredients require that on the ingredient list, vanilla be "followed immediately by the statement 'contains vanillin, an artificial flavor (or flavoring),'" even if the vanillin is made from natural materials and through a natural process [34]

    79.   If a product made with a vanilla-vanillin combination ingredient represented that its

---

[32] 21 C.F.R. § 169.180, § 169.181, § 169.182.
[33] 21 C.F.R. § 169.175 (Vanilla extract.), § 169.176 (Concentrated vanilla extract.), § 169.177 (Vanilla flavoring.), § 169.178 (Concentrated vanilla flavoring.) and § 169.179 (Vanilla powder.).
[34] See 21 C.F.R. § 169.180(b), § 169.181(b), § 169.182(b).

characterizing flavor was vanilla, its front label would be required to declare the presence of vanillin and/or artificial flavor(s).

80.     These requirements prevent consumers from being misled by products which "boost," "fortify" or "spike" a miniscule amount of real vanilla with the addition of vanillin, from non-vanilla sources such as tree bark, eugenol and lignin.

81.     Without any conspicuous disclosure of how much flavor in a product is derived from real vanilla as opposed to vanillin, consumers would pay more money for products that may taste like vanilla even though the taste is not derived from vanilla beans.

82.     For the purposes of ice cream flavor labeling, vanillin (from non-vanilla sources) cannot be designated as a "natural flavor" because it implies it derives from vanilla beans, whose flavor it simulates.[35]

83.     This applies even when vanillin is produced through a natural process (fermentation), such that it is properly designated as "vanillin derived naturally through fermentation."

84.     This means if a vanilla flavor is derived from any source other than vanilla, it is accurately designated as an artificial flavor.[36]

85.     Therefore, the standardized vanilla-vanillin combination ingredients are not the ingredients used in the Products but for some reason, designated as "natural flavor."

VIII.   "Natural Flavor" Refers to a Compounded Flavor

A.   Reasons for Use of Compounded Vanilla Flavor

86.     The global production of vanilla has been reduced tremendously by climactic events such as monsoons and cyclones in the primary growing regions.

---

[35] 21 C.F.R. § 101.22(a)(3)
[36] In contrast to the regulations at 21 C.F.R. § 101.22.

20

87.    Reports of vanilla being sold at hundreds of dollars per kilogram, at least a tenfold increase over the past decade, have caused companies to reevaluate their reliance on real vanilla beans.

88.    One trade journal described how industry is reacting to this "crisis of vanilla" – and has "innovated natural vanilla solutions…to protect our existing customers."[37]

89.    According to Suzanne Johnson, vice president or research at a North Carolina laboratory, "Many companies are trying to switch to natural vanilla with other natural flavors [WONF] in order to keep a high-quality taste at a lower price."

90.    Companies like Flavorchem realize that consumers still want vanilla, and have formulated "replacement solutions" like "Nat-WONF" and "Nat Type."

B.    Vanilla Replacement is Likely "Vanilla with Other Natural Flavors" ("Vanilla WONF")

91.    The typical ingredient used to replace vanilla is "Vanilla With Other Natural Flavors" or "Vanilla WONF."

92.    This flavor mixture consists of vanilla extract or vanilla flavorings with other flavoring substances.

93.    The presence of vanilla extract as part of – but not the entirety of – the Natural Flavor ingredient is hinted at through the back label declaration:



Rainforest Alliance Certified Ingredients Include Chocolate, Cocoa, Cocoa Butter and Natural Flavor (Vanilla Extract).

94.    Parentheticals are commonly used as an explanatory phrase or an editorial aside,

---

[37] Amanda Del Buono, Ingredient Spotlight, Beverage Industry, Oct. 3, 2016.

where the text within the parentheses sheds light on the term outside of it.

95.    In the context of defendant's "Natural Flavor (Vanilla Extract)" statement, this is meant to indicate that the vanilla extract *component* of the Natural Flavor has been Rainforest Alliance Certified.

96.    The entire Natural Flavor ingredient cannot likely be Rainforest Alliance Certified because the flavoring agents, enhancers and other compounds likely contained in the Natural Flavor ingredient cannot be certified by the Rainforest Alliance because they are known only in laboratories.

97.    This Natural Flavor or Vanilla WONF can be described as a type of "compounded flavor," which often "consist of as many as 100 or more flavor ingredients."[38]

98.    This compounded flavor is the result of blending flavor materials together at a special ratio in which they compliment and enhance each other.

99.    Companies which use this compounded ingredient in a Category 1 ice cream and claim the flavor consists entirely of "natural vanilla flavor*ings*" or that it is "almost completely vanilla" likely are mistaken with respect to the relevant law and/or not told the entire truth by their suppliers.

100.   In fact, companies may claim, based on what they have been told by their suppliers, that the "natural flavor" ingredient is highly proprietary.

101.   Such an argument is incredulous because there is nothing proprietary about vanilla extract which has been prepared the same way for almost one hundred years.

102.   Ingredients are allowed to be declared as "natural flavor" when there is (1) no standard prescribing the way to designate the specific flavor combination and (2) it would

---

[38] Hallagan and Drake, FEMA GRAS and U.S. Regulatory Authority: U.S. Flavor and Food Labeling Implications, Perfumer & Flavorist, Oct. 25, 2018.

compromise trade secrets by disclosing the composition and ratio of the flavor constituents.

103.   Should defendant assert that being a European brand of ice cream qualifies it for an exemption from regulations and standards in this country, this is insufficient to excuse or justify the deceptive conduct.

## IX. Coloring Misleads Consumers to Expect Products Contain More Vanilla Than They Do

104.   Some or all of the Products contain extracts of annatto for coloring purposes, indicated on their ingredient lists and reproduced in the below table.

105.   Annatto extracts are often used in cheddar cheese to provide a rich yellow-orange shade evocative of milkfat associated with butter, produced by dairy cattle in the United States.

106.   No allegation is made with respect to how annatto and turmeric are declared or about their use, which is specifically permitted by regulation.[39]

107.   The added coloring provided to the Products by annatto modifies the color of the vanilla ice creams to a color closer to a vanilla ice cream flavored exclusively by flavor from the vanilla plant.

108.   The result is a darker color as indicated below, which is similar in appearance to color of the ice cream scoops on the front labels.



---

[39] 21 C.F.R. § 101.22(k)(3)

109.   The darker color makes the consumer (1) less likely to question or be skeptical of the amount and type of vanilla in the Products, (2) expect the Products to be similar to other, accurately labeled vanilla ice creams and (3) expect the Products contain more vanilla than they actually do.

X.     Vanilla Ice Cream Products are Misleading Because They are Labeled and Named Similar to Other Products

110.   Competitor brands to defendant's Products are labeled as or containing vanilla ice cream, and are not misleading because they only contain vanilla.

A.   Vanilla Ice Cream Product of Competitor and Defendant

111.   The following is an example of a Vanilla Ice Cream Product of defendant and a competitor product.

Competitor Product                                    Product

Vanilla Ice Cream Dipped in, then drizzled in rich milk chocolate

Vanilla Bean Ice Cream Dipped in a Chocolatey Coating, Chocolatey Sauce and Milk Chocolate




112.   The ingredients in the Competitor Product and Product are presented below.

| Competitor Product | Product |
|---|---|

**INGREDIENTS: VANILLA ICE CREAM:** CREAM, SKIM MILK, SUGAR, EGG YOLKS, VANILLA EXTRACT. **MILK CHOCOLATE AND VEGETABLE OIL COATING:** MILK CHOCOLATE (SUGAR, WHOLE MILK POWDER, CHOCOLATE, COCOA BUTTER, SOY LECITHIN, VANILLA EXTRACT), COCONUT OIL.

INGREDIENTS: MILK, MILK CHOCOLATE [SUGAR, CHOCOLATE, COCOA BUTTER, MILK, MILKFAT, PGPR (EMULSIFIER) AND SOY LECITHIN (EMULSIFIER), VANILLA EXTRACT], CHOCOLATEY SAUCE [WATER, SUGAR, CORN SYRUP, COCOA PROCESSED WITH ALKALI, NONFAT DRY MILK, COCONUT OIL, MODIFIED CORN STARCH, MONO AND DIGLYCERIDES, CARRAGEENAN, POTASSIUM SORBATE (USED TO PROTECT QUALITY), CREAM, CHOCOLATEY COATING [COCONUT OIL, SUGAR, COCOA, SOY LECITHIN, VANILLA EXTRACT], SUGAR, CORN SYRUP, **LESS THAN 1% OF:** WHEY, MONO AND DIGLYCERIDES, LOCUST BEAN GUM, WATER, GUAR GUM, NATURAL FLAVOR, CARRAGEENAN, CARAMEL AND ANNATTO EXTRACT (COLOR).

**Ingredients:** **Milk**, Milk Chocolate [Sugar, Chocolate, Cocoa Butter, Milk, Milkfat, PGPR (Emulsifier) And Soy Lecithin (Emulsifier), Vanilla Extract], Chocolatey Fudge [Water, Sugar, Corn Syrup, Cocoa Processed With Alkali, Nonfat Dry Milk, Coconut Oil, Modified Corn Starch, Mono And Diglycerides, Carrageenan, Potassium Sorbate (Used To Protect Quality)], **Cream**, Chocolatey Coating [Coconut Oil, Sugar, Cocoa, Soy Lecithin, Vanilla Extract], **Sugar, Corn Syrup, Contains 1 Percent Of The Following: Whey, Mono And Diglycerides, Locust Bean Gum, Water, Guar Gum,** Natural Flavor**, Carrageenan, Caramel And Annatto Extract (Color).**

**Ingredients:** Vanilla Ice Cream: Cream, Skim Milk, Sugar, Egg Yolks, Vanilla Extract. Milk Chocolate and Vegetable Oil Coating: Milk Chocolate (Sugar, Whole Milk Powder, Chocolate, Cocoa Butter, Soy Lecithin, Vanilla Extract), Coconut Oil.

113.  The competitor product lists "Vanilla Extract" on its ingredient list and does not indicate the presence of other flavors not derived from vanilla, such as "Natural Flavor," as listed in defendant's Products.

B.  Misleading to Have Identical or Similar Product Names Where Significant Differences in Product Quality or Composition

114.  Product names for ice cream are established through application of the relevant regulations.

115.  Products are required to be identified and labeled in a way consistent with other products of similar composition.

116.  This framework assures consumers will not be misled by the quality and components

of similarly labeled products where one product contains a greater amount, type and/or proportion of a characterizing and valuable ingredient.[40]

117.  Where two products are identified by the same descriptive terms and noun such as "Vanilla (Bean) Ice Cream" and where the front label has no other modifications of these terms, consumers will be deceived into purchasing the lower quality product under the false impression that it contains the equivalent amount of said ingredients or components.

118.  Defendant's Product is misleading because it is represented as identical to another product which contains higher quality ingredients, which causes consumers to be misled and purchase the former expecting the two products to be identical in quality and fill.

XI. Conclusion

119.  The proportion of the characterizing component, vanilla, has a material bearing on price or consumer acceptance of the Products because it is more expensive and desired by consumers.

120.  The Products are misleading because they do not contain the amount, type and percentage of vanilla as a component of the flavoring in the product which is required and consistent with consumer expectations.

121.  The representations of "vanilla (bean)" describing the ice cream products are unqualified, and the labels and packaging do not disclose the addition of non-vanilla flavors as part of the Products.

122.  Had plaintiff and class members known the truth about the Products, they would not

---

[40] *See* 21 C.F.R. § 135.110(f) and 21 C.F.R. § 102.5(a) ("General principles.") ("General principles.") ("The name shall be uniform among all identical or similar products and may not be confusingly similar to the name of any other food that is not reasonably encompassed within the same name. Each class or subclass of food shall be given its own common or usual name that states, in clear terms, what it is in a way that distinguishes it from different foods.").

have bought the Product or would have paid less for it.

123.   The Products contain other representations which are misleading and deceptive.

124.   As a result of the false and misleading labeling, the Products are sold at premium prices, approximately no less than $6.59 per 9.12 OZ, calculated on an average per ounce basis across the Products, excluding tax – compared to other similar products represented in a non-misleading way.

<u>Jurisdiction and Venue</u>

125.   Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

126.   Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

127.   Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

128.   Plaintiff is a citizen of New York.

129.   Defendant Unilever Manufacturing (US), Inc. is a Delaware corporation with a principal place of business in Englewood Cliffs, Bergen County, New Jersey and therefore is a citizen of New Jersey.

130.   This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

131.   Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

132.   A substantial part of events and omissions giving rise to the claims occurred in this

Case 7:19-cv-10102-KMK   Document 5   Filed 11/01/19   Page 28 of 34

District.

<u>Parties</u>

133.  Plaintiff Sharon Dashnau is a citizen of Orange County, New York.

134.  Defendant is a Delaware corporation with a principal place of business in Englewood Cliffs, Bergen County, New Jersey.

135.  During the class period, plaintiff purchased one or more of the Products identified herein for personal use, consumption or application based on the above representations, for no less than the price indicated, *supra*, excluding tax, within her district and/or state.

136.  Plaintiff would consider purchasing the Products again if there were assurances that the Products' representations were no longer misleading.

<u>Class Allegations</u>

137.  The classes will consist of all consumers in all 50 states with sub-classes for the individual states and nationwide classes.

138.  Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiff and class members are entitled to damages.

139.  The claims and the basis for relief of plaintiff are typical to other members because all were subjected to the same representations.

140.  Plaintiff is an adequate representative because her interests do not conflict with other members.

141.  No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

142.  Individual actions would risk inconsistent results, be repetitive and are impractical

to justify, as the claims are modest.

143.   The counsel for plaintiff is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

144.   Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350</u>
<u>and Consumer Protection Statutes of Other States and Territories</u>

145.   Plaintiff asserts causes of action under the consumer protection statutes of New York, General Business Law ("GBL") §§ 349 & 350.

146.   Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

147.   Plaintiff and class members desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type.

148.   Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because (1) it gives the impression to consumers the Products are only flavored by the characterizing ingredient and contains more of the characterizing ingredient than they actually do, (2) the ingredient list fails to dispel ambiguity and reinforces the front-label impression as to a greater amount of the characterizing ingredients (3) it does not conspicuously disclose the presence of artificial flavors on one of the Products identified here.

149.   Plaintiff and class members relied on the representations and omissions, paying more than they would have, causing damages.

<u>Negligent Misrepresentation</u>

150.   Plaintiff incorporates by reference all preceding paragraphs.

151.   Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Products through representing the characterizing ingredient was

present in greater amount and proportion than it was and affirmatively representing the Products was flavored only by this ingredient or component.

152.  Defendant had a duty to disclose and/or provide non-deceptive labeling of the Products and knew or should have known same were false or misleading.

153.  This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product or service type.

154.  The representations took advantage of consumers' (1) cognitive shortcuts made at the point-of-sale and (2) trust placed in defendant, a well-known and respected brand in this sector.

155.  Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

156.  Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty, Implied Warranty of Merchantability and<br>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

157.  Plaintiff incorporates by reference all preceding paragraphs.

158.  Defendant manufactures and sells products which contain the identified characterizing ingredients and/or flavors which are desired by consumers.

159.  The Products warranted to plaintiff and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

160.  Defendant's front labels informed and warranted to plaintiff the Products contained only the characterizing ingredients to impart flavor, and that they were present in amounts

sufficient to independently characterize the food and that the flavor imparted to the Products was a result of the food ingredients and not "natural flavors" or "other natural flavors."

161.  Defendant had a duty to disclose and/or provide a non-deceptive description of the Products flavoring on the front labels and knew or should have known same were false or misleading.

162.  This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

163.  Plaintiff provided or will provide notice to defendant and/or its agents, representatives, retailers and their employees.

164.  The Products did not conform to their affirmations of fact and promises due to defendant's actions and were not merchantable.

165.  Plaintiff and class members relied on defendant's claims, paying more than they would have.

<u>Fraud</u>

166.  Plaintiff incorporates by references all preceding paragraphs.

167.  Defendant's purpose was to sell products which purported to contain valuable and desired characterizing ingredient(s) or flavor(s), and represent the Products were exclusively or predominantly flavored from that ingredient and contained sufficient independent amounts of same.

168.  The Products were not flavored exclusively from the characterizing ingredient but from flavor compounds blended together and labeled as "natural vanilla flavor with other natural flavor."

169.  Defendant's fraudulent intent is evinced by its failure to accurately indicate the

Products contained flavor from non-vanilla sources on the front label, because it knows consumers prefer foods that are flavored from food ingredients instead of added flavor ingredients and contain enough of the characterizing food ingredients to flavor the Products.

170.   Defendant's intent was to secure economic advantage in the marketplace against competitors by appealing to consumers who value products with sufficient amounts of the characterizing ingredients for the above-described reasons.

171.   Plaintiff and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

<u>Unjust Enrichment</u>

172.   Plaintiff incorporates by references all preceding paragraphs.

173.   Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

 **WHEREFORE,** Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove and/or refrain from the challenged representations, restitution and disgorgement for members of the State Subclasses pursuant to the consumer protection laws of their States;

4.  Awarding monetary damages and interest, including treble and punitive damages, pursuant

to the common law and consumer protection law claims, and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   November 1, 2019

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

-and-

**REESE LLP**
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
*mreese@reesellp.com*

7:19-cv-10102
United States District Court
Southern District of New York

Sharon Dashnau, individually and on behalf of all others similarly situated

Plaintiff,

- against -

Unilever Manufacturing (US), Inc.

Defendant

## Class Action Complaint

```
Sheehan & Associates, P.C.
 505 Northern Blvd., #311
  Great Neck, NY 11021
  Tel: (516) 303-0552
  Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  November 1, 2019

/s/ Spencer Sheehan
Spencer Sheehan