UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHARON DASHNAU & GREGORY RODRIGUEZ-APPELDORN, *individually and on behalf of all others similarly situated*, <br><br> Plaintiffs, <br><br> -v- <br><br> UNILEVER MANUFACTURING (US), INC., <br><br> Defendant. | 19-CV-10102 (KMK) <br><br> <u>OPINION & ORDER</u> |

<u>Appearances:</u>

Christopher Patalano, Esq.
Spencer Sheehan, Esq.
Sheehan & Associates, P.C.
Great Neck, NY
*Counsel for Plaintiffs*

August T. Horvath, Esq.
Foley Hoag LLP
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

Plaintiffs Sharon Dashnau ("Dashnau") and Gregory Rodriguez-Appeldorn ("Rodriguez-Appeldorn"; together, "Plaintiffs") bring this putative class action against Unilever Manufacturing (US), Inc. ("Defendant"), alleging that the labeling on Defendant's vanilla-flavored ice cream dessert bars is deceptive and misleading. Plaintiffs assert claims against Defendant for (1) violations of §§ 349 and 350 of the New York General Business Law, (2) negligent misrepresentation, (3) breaches of express warranty, the implied warranty of merchantability, and the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, (4) fraud, and (5) unjust enrichment. Before the Court is Defendant's Motion To Dismiss the First

Amended Complaint (the "Motion").  (*See* Not. of Mot. (Dkt. No. 19).)  For the following

reasons, the Motion is granted.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiffs' First Amended Complaint and are taken as

true for the purposes of resolving the instant Motion.

Defendant manufactures, distributes, markets, labels, and sells chocolate-coated bars of

vanilla-flavored ice cream under the "Magnum" brand (the "Product").  (First Am. Compl.

("FAC") ¶ 1 (Dkt. No. 11).)  The Product is sold to consumers through retail and online stores in

packages of three bars.  (*Id.* ¶ 2.)  The front label of the Product contains the words, "Double

Chocolate Vanilla," and describes the Product as "Vanilla Bean Ice Cream Dipped In A

Chocolatey Coating, Chocolatey Sauce And Milk Chocolate."  (*Id.* ¶ 3.)[1]

Plaintiffs allege that the words "vanilla bean ice cream" convey four distinct messages to

reasonable consumers.  First, "vanilla is the characterizing flavor."  (*Id.* ¶ 4.)  Second, "vanilla is

contained in a sufficient amount to flavor the product."  (*Id.*)  Third, the Product's vanilla flavor

is provided *only* "by the natural characterizing flavor of vanilla" and is "derived from vanilla

extract or vanilla flavoring *and* unexhausted vanilla beans."  (*Id.*)  And fourth, "no other flavors

simulate, resemble, reinforce, extend[,] or enhance the [P]roduct's vanilla taste or compensate for

any reduction in the amount of real vanilla used to supply the vanilla taste."  (*Id.*)

Plaintiffs allege that the Product actually contains a "de minimis amount of real vanilla."

(*Id.* ¶ 5.)  Relying on a gas chromatography-mass spectrometry analysis (the "GC-MS Analysis")

performed on the Product, Plaintiffs allege that to the extent the Product contains "real vanilla,"

---

[1] On the package itself, the quoted language appears in all capital letters.  (*See* FAC ¶ 3.)

it exists in such trace amounts as to be undetectable "by advanced scientific means."  (*Id.* ¶¶ 103–04.)[2]  The GC-MS Analysis also indicates that although the Product contains maltol and vanillin, two ingredients used to simulate the flavor of vanilla, the Product uses *ethyl* vanillin, which "is sourced from petroleum byproducts instead of vanilla beans."  (*Id.* ¶ 110; *see id.* ¶¶ 102, 107–09; *see also id.* ¶ 5 ("[T]o the extent [the Product] tastes like vanilla, such flavor is mainly contributed by vanillin from non-vanilla sources.").)

In light of the Product's contents, Plaintiffs allege that "Defendant's branding and packaging of the Product is designed to—and does—deceive, mislead, and defraud . . . consumers."  (*Id.* ¶ 121.)  Plaintiff Dashnau purchased the Product at a Walmart in Middletown, New York during the summer and fall of 2019.  (*Id.* ¶ 137.)  Plaintiff Rodriguez-Appeldorn purchased the Product at a store in Westchester County "on multiple occasions" in 2019 and 2020.  (*Id.* ¶ 138.)  Plaintiffs allege that they purchased the Product "because they liked the product type for its intended use and expected its vanilla flavor to come from only real vanilla beans."  (*Id.* ¶ 139.)  They further allege that if the vanilla flavor in the Product was "provided by flavors which modified or enhanced the vanilla," they would have "expected that to be indicated on the front label."  (*Id.*)  Plaintiffs allege that the Product was materially less valuable than Defendant's labeling suggested, and if they had "known the truth," they would not have bought the Product, or at least would have paid less for it.  (*Id.* ¶¶ 123–24.)

---

[2] Plaintiffs aver that gas chromatography-mass spectrometry "is 'the analysis method of choice' which has 'proven its worth for the analysis of vanilla constituents.'"  (FAC ¶ 94 (citation omitted).)  This analysis is performed by "convert[ing] [the Product] to a vapor and purg[ing] [it] with inert gas[,] . . . causing the volatile aromatic compounds to be extracted."  (*Id.* ¶ 96.)

### B.  Procedural History

Plaintiffs filed their initial Complaint on November 1, 2019, (Dkt. No. 5), and filed their First Amended Complaint on May 13, 2020, (Dkt. No. 11).  Defendant filed a pre-motion letter regarding its putative motion to dismiss on May 27, 2020, (Dkt. No. 12), Plaintiffs responded on June 15, 2020, (Dkt. No. 14), and the Court held a pre-motion conference on July 9, 2020, (*see* Dkt. (minute entry for July 9, 2020)).  Pursuant to a briefing schedule set by the Court, (Dkt. No. 17), Defendant filed the instant Motion and supporting papers on August 10, 2020, (Dkt. Nos. 19–20).  Plaintiffs filed an opposition on September 10, 2020, (Dkt. No. 21), and, with leave from the Court, (Dkt. No. 23), filed their revised Opposition on September 15, 2020, (Dkt. No. 24).  Defendant filed its Reply on September 30, 2020.  (Dkt. No. 25.)  As courts in this District and other federal jurisdictions have granted similar motions in recent months, Defendant has apprised the Court of relevant supplemental authority on eight occasions.  (Dkt. Nos. 26–33.)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of his [or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the

speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

### B.  Analysis

As noted, Plaintiffs assert claims against Defendant for (1) violations of §§ 349 and 350 of the New York General Business Law, (2) negligent misrepresentation, (3) breaches of express warranty, the implied warranty of merchantability, and the Magnuson Moss Warranty Act, (4) fraud, and (5) unjust enrichment.  (*See* FAC ¶¶ 149–86.)  In considering these claims, the Court does not write on a blank slate.  In recent months, seven other courts in this District have dismissed nearly identical claims against manufacturers of similar vanilla-flavored products (the "SDNY Vanilla Cases").  *See Cosgrove v. Oregon Chai, Inc.*, No. 19-CV-10686, 2021 WL 706227, at *12–17 (S.D.N.Y. Feb. 21, 2021) (dismissing same causes of action based on vanilla-flavored chai tea); *Twohig v. Shop-Rite Supermarkets, Inc.*, — F. Supp. 3d —, 2021 WL 518021, at *3–9 (S.D.N.Y. Feb. 11, 2021) (same with respect to vanilla-flavored soymilk); *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104, 2021 WL 168541, at *2–7 (S.D.N.Y. Jan. 19, 2021) (same with respect to vanilla-flavored almond milk); *Barreto v. Westbrae Nat., Inc.*, No. 19-CV-9677, 2021 WL 76331, at *2–8 (S.D.N.Y. Jan. 7, 2021) (same with respect to vanilla-flavored soymilk); *Cosgrove v. Blue Diamond Growers*, No. 19-CV-8993, 2020 WL 7211218, at *3–5 (S.D.N.Y. Dec. 7, 2020) (same with respect to vanilla-flavored almond milk); *Pichardo v. Only What You Need, Inc.*, No. 20-CV-493, 2020 WL 6323775, at *2–6 (S.D.N.Y. Oct. 27, 2020) (dismissing New York General Business Law claim with respect to vanilla-flavored protein drink); *Steele v. Wegmans Food Markets, Inc.*, 472 F. Supp. 3d 47, 50–51 (S.D.N.Y. 2020) (dismissing New York General Business Law and common law claims with respect to vanilla-flavored ice cream).  Although this case has one distinguishing feature, discussed *infra*, the Court finds ample guidance in these intra-district decisions.  Moreover, as these recent decisions illustrate, if the Court concludes as a matter of law that there is no material misrepresentation in this case, none

of Plaintiffs' claims can survive the instant Motion.  *See e.g.*, *Blue Diamond Growers*, 2020 WL 7211218, at *3 (explaining that because the plaintiffs' causes of action—identical to those here— were "all premised on the same contention" that the defendant's labeling of the product was materially misleading, if the defendant's product "does not mispresent the contents of the container as a matter of law, [then] all of [the] [p]laintiffs' claims must be dismissed").

### 1.  New York General Business Law §§ 349 and 350

Plaintiffs' first cause of action is based on §§ 349 and 350 of the New York General Business Law ("GBL").  (FAC ¶¶ 149–57.)  "Section 349 prohibits '[d]eceptive acts or practices in the conduct of any business, trade or commerce,' whereas [§] 350 prohibits '[f]alse advertising in the conduct of any business, trade or commerce.'"  *Wynn*, 2021 WL 168541, at *2 (alterations in original) (quoting GBL §§ 349–50).  "'The standard for recovery under . . . § 350, while specific to false advertising, is otherwise identical to [§] 349,' and therefore the Court will merge its analysis of the two claims."  *Oregon Chai*, 2021 WL 706227, at *6 (citation omitted); *see also Barreto*, 2021 WL 76331, at *2 (same).  To state a claim under either section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."  *Wynn*, 2021 WL 168541, at *2 (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)); *see also Oregon Chai*, 2021 WL 706227, at *6 (same); *Twohig*, 2021 WL 518021, at *3 (same).  To survive a motion to dismiss, "plaintiffs must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers."  *Twohig*, 2021 WL 518021, at *3 (alteration and internal quotation marks omitted) (quoting *Sarr v. BEF Foods, Inc.*, No. 18-CV-6409, 2020 WL 729883, at *3 (E.D.N.Y. Feb. 13, 2020)).  Rather, they must "plausibly allege that a significant portion of the general consuming public or of targeted

customers, acting reasonably in the circumstances, could be misled." *Id.* (quoting *Sarr*, 2020 WL 729883, at *3).  Finally, "[a]lthough the question of whether a business practice or advertisement is misleading to the reasonable consumer is generally a question of fact," *Wynn*, 2021 WL 168541, at *2, "it is 'well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer,'" *id.* (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013)).

The only disputed element of Plaintiffs' GBL claim is whether the Product's labeling is "materially misleading."  Plaintiffs argue that the Product is misleading because reasonable consumers would expect the Product's vanilla flavor to come *exclusively* from real vanilla and, in particular, from real vanilla beans—*without* artificial vanilla flavoring or other flavor enhancers, such as maltol.  (*See* FAC ¶ 4 (asserting that the Product's labeling gives consumers the impression that "the flavor is only provided by the natural characterizing flavor of vanilla and derived from vanilla extract or vanilla flavoring *and* unexhausted vanilla beans[,] and [that] . . . no other flavors simulate, resemble, reinforce, extend[,] or enhance the product's vanilla taste or compensate for any reduction in the amount of real vanilla used to supply the vanilla taste"); *id.* ¶ 139 ("Plaintiffs bought the Product because they liked the product type for its intended use and expected its vanilla flavor to come from only real vanilla beans because if the flavor was provided by flavors which modified or enhanced the vanilla, they expected that to be indicated on the front label."); *id.* ¶ 154 ("Reasonable consumers do not expect vanilla ice cream labeled only with 'vanilla' to contain artificial vanilla, *viz*, vanillin—nor added enhancers like maltol."); *see also* Pls.' Mem. of Law in Opp'n to Def.'s Mot ("Pls.' Opp'n") 9 (Dkt. No. 24) ("Plaintiffs believe that consumers who buy a product labeled only with 'vanilla' and 'vanilla bean' expect *only* flavors from those ingredients. . . .  Plaintiffs and reasonable consumers do not expect a

product labeled only with 'vanilla' to contain artificial vanilla flavors, such as vanillin, ethyl

vanillin[,] and maltol.").)  In the Court's view, Plaintiffs' argument is foreclosed by substantial

recent case law from this District.

    As an initial matter, the Court will accept Plaintiffs' allegations that the Product is not

flavored exclusively with "real vanilla."  (*See* FAC ¶¶ 102–12.)  *See also Wynn*, 2021 WL

168541, at *3 (accepting the "[p]laintiffs' allegations that [the] [d]efendant's product is not

exclusively flavored by genuine vanilla extract").  Even so, Plaintiffs have not plausibly alleged

that a reasonable consumer who reads the words "vanilla bean ice cream" on the Product's front

label would conclude that this labeling implies that the vanilla flavor is derived *exclusively* from

"real vanilla," or from vanilla beans.  Here, as in *Wynn*, Plaintiffs' allegations that reasonable

consumers would expect the Product "to be flavored *exclusively* with real vanilla are conclusory

statements that the Court is not required to accept."  2021 WL 168541, at *3.  In *Wynn*, Judge

Abrams explained that in contrast to similar cases brought in this District, the plaintiffs there did

"not attempt to marshal consumer survey data to support their allegation that reasonable

customers interpret 'vanilla' to mean 'flavored with exclusively natural vanilla.'"  *Id.*; *cf. Twohig*,

2021 WL 518021, at *5 (discussing, but disregarding, the results of a survey "designed at the

behest of counsel who apparently has brought nearly 100 similar lawsuits challenging the

labeling of vanilla flavored products," and concluding that the survey was "sufficiently flawed

that it does not contribute enough to render the claims plausible"); *Pichardo*, 2020 WL 6323775,

at *6 (discussing, but ultimately discrediting, plaintiffs' proffered survey data).  Here too,

Plaintiffs provide no empirical basis to substantiate their assertion that reasonable consumers

would interpret the Product's label to imply an exclusive source of vanilla flavoring.  It is true, as

in *Wynn*, that "Plaintiffs point to a range of federal labeling regulations as evidence of what

consumers should expect different types of labels to imply about the contents of their products."
*Wynn*, 2021 WL 168541, at *3.  (*See* FAC ¶¶ 24–42, 53–92, 113–19.)  "But even if Plaintiffs are
correct about what the federal regulations require[,] . . . the [First Amended] [C]omplaint does
not allege that reasonable consumers are aware of these complex regulations, much less that they
incorporate the regulations into their day-to-day marketplace expectations."  *Wynn*, 2021 WL
168541, at *3 (citing *N. Am. Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514, 519
(S.D.N.Y. 2013) (concluding that a product's labeling did not mislead consumers where there
was "no extrinsic evidence that the perceptions of ordinary consumers align with [FDA] labeling
standards")).  Thus, Plaintiffs' citation to various federal regulations does not establish that a
reasonable consumer is likely to be misled by the words "vanilla bean ice cream" on the
Product's front label.  *See id.*; *see also Steele*, 472 F.Supp.3d at 50 ("The point here is not
conformity with this or that standard (which is left to the authorities to regulate) but whether the
marketing presentation was deceptive.").

      Indeed, *Wynn* is one of seven cases that have found that the word "vanilla" on a product's
front label makes a representation about the *flavor* of the product, but does not make a
representation about the *source* of the product's vanilla flavor.  *See Oregon Chai*, 2021 WL
706227, at *12 (concluding that the word "vanilla" on the front of the package "appears to
describe a flavor more than an ingredient"); *Twohig*, 2021 WL 518021, at *4 (concluding that the
word "vanilla" on the front label would not "lead a reasonable consumer to believe that vanilla
from vanilla beans is the exclusive or predominant flavor ingredient"); *Wynn*, 2021 WL 168541,
at *4 (concluding that the "[d]efendant's 'Vanilla Almondmilk' front label makes no
representations whatsoever about the source of the vanilla flavor or the ingredients constituting
it"); *Barreto*, 2021 WL 76331, at *4 (concluding that the product's labeling—which contains the

words "Vanilla Soymilk" and "Natural Vanilla Flavor With Other Natural Flavors"—"makes a representation regarding its flavor and does not imply or represent [that] the source of that flavor comes exclusively or predominantly from natural vanilla"); *Blue Diamond Growers*, 2020 WL 7211218, at *3 (concluding that a reasonable consumer would associate the word "vanilla" with a flavor, rather than a particular ingredient); *Pichardo*, 2020 WL 6323775, at *5 (noting that "reasonable consumers associate the word 'vanilla' with a flavor, not with an ingredient"); *Steele*, 472 F. Supp. 3d at 50 (explaining that the word "vanilla" assists buyers in determining the *flavor* of a product, rather than the source of that flavor).  Thus, although the plaintiffs in each case alleged that there was a de minimis amount of real vanilla in the vanilla-flavored products, the court held that such allegations were insufficient to adequately plead a material misrepresentation.  *See Oregon Chai*, 2021 WL 706227, at *12–15; *Twohig*, 2021 WL 518021, at *4–7; *Wynn*, 2021 WL 168541, at *2–5; *Barreto*, 2021 WL 76331, at *2–6; *Blue Diamond Growers*, 2020 WL 7211218, at *3–5; *Pichardo*, 2020 WL 6323775, at *3–6; *Steele*, 472 F. Supp. 3d at 50–51.

This case would be on all fours with these recent cases, but for one distinction.  Whereas the products in the SDNY Vanilla Cases all contained the word "vanilla," without any additional modifiers suggesting a particular *source* of the product's vanilla flavor, the Product label in this case contains the words "vanilla *bean* ice cream," (*see* FAC ¶¶ 3–4 (emphasis added)).  Thus, to the extent Plaintiffs argue that the Product label makes a representation about a particular source of vanilla flavoring, their argument is marginally stronger here than were similar arguments in the SDNY Vanilla Cases.  In *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018), the Second Circuit considered whether Cheez-Its boxes "conspicuously labeled 'WHOLE GRAIN' and 'MADE WITH WHOLE GRAIN'" were misleading in light of the fact that the grain in the

product was predominantly made of enriched white flour, rather than actual whole grain.  *Id.* at 636–37.  The court observed that in the context of crackers, "reasonable consumers [were] likely to understand that crackers are typically made predominantly of grain," and thus, "[t]hey look to the bold assertions on the packaging to discern what *type* of grain."  *Id.* at 638.  Although the Cheez-Its boxes contained the amount of whole grain in the crackers per serving ("MADE WITH 5G [OR 8G] OF WHOLE GRAIN PER SERVING") at the bottom of the front label, the court held that the boxes were "nonetheless misleading because they falsely impl[ied] that the grain content [was] entirely or at least predominantly whole grain, whereas in fact, the grain component consisting of enriched white flour substantially exceed[ed] the whole grain portion."  *Id.* at 637.  Relying on *Mantikas*, a court in the Eastern District of New York recently held that a beverage label with the words "MADE WITH AGED VANILLA" was materially misleading where "the vanilla flavor [came] predominantly—if not exclusively—from . . . ethyl vanillin." *Sharpe v. A&W Concentrate Co.*, 481 F. Supp. 3d 94, 96 (E.D.N.Y. 2020).  There, the court explained that "the use of the word 'aged' suggests to consumers that the vanilla content is naturally derived and has acquired a desirable quality upon the passage of time."  *Id.* at 102.  "By holding out their products as containing 'aged vanilla,'" the court continued, "defendants' representation is the equivalent to stating the beverages are 'Made With Natural Vanilla.'"  *Id.*

Distinguishing *Mantikas* and *Sharpe*, each of the SDNY Vanilla Cases has noted that the product labeling in question merely contained the word "vanilla," without additional language modifiers that could imply a particular ingredient or source of flavoring.  *See Oregon Chai*, 2021 WL 706227, at *12 (observing that the product labeling did not "suggest the exclusive, or even predominant, use of vanilla beans as opposed to other sources," where there was "no reference to 'vanilla bean' or 'vanilla extract' anywhere on the packaging; nor [was] there any reference to

the product being 'made with' or 'made from' any part of the vanilla plant"); *Twohig*, 2021 WL 518021, at *5 ("Here the [p]roduct's label does not contain the words 'made with,' and there is no mention of vanilla beans anywhere."); *Wynn*, 2021 WL 168541, at *4 ("[The] [d]efendant's front label makes no explicit claims about the ingredients constituting the flavor; it does not, for example, say 'made with real vanilla extract' or even mention vanilla extract at all."); *Barreto*, 2021 WL 76331, at *4 ("Here, neither the front label of [defendant's] Vanilla Soymilk nor the ingredient panel claim to identify the predominate source of its vanilla flavor . . . ."); *Blue Diamond Growers*, 2020 WL 7211218, at *4 ("[The] [d]efendant's [p]roduct does not use the words 'vanilla bean' or 'vanilla extract,' nor does it use language such as 'made with vanilla' or anything similar."); *Pichardo*, 2020 WL 6323775, at *5 ("Had [the] [d]efendant's label contained other qualifying words, such as 'made with,' 'contains,' or 'vanilla beans,' a reasonable consumer might be led to believe that vanilla from vanilla extract is the exclusive or primary flavor ingredient, but that is not the case here."); *Steele*, 472 F. Supp. 3d at 50 ("The [defendant's] container does not mention vanilla beans, or bean extract, and even if vanilla or bean extract is not the predominant factor, if the sources of the flavor are natural, not artificial, it is hard to see where there is deception.").  Although the Product label here does contain an additional qualifying word ("vanilla *bean* ice cream"), and is distinguishable from the SDNY Vanilla Cases in this respect, it does not explicitly claim to be "made with" a particular type of ingredient, as was the case in *Mantikas* and *Sharpe*.  In this sense, the instant case appears to fall somewhere between these two lines of cases.

Ultimately, however, the Court finds that this case fits more in line with the SDNY Vanilla Cases than it does with *Mantikas* and *Sharpe*.  The principle distinction between these two lines of cases is whether the labeling in question makes a claim about a *flavor* or about an

*ingredient*.  As Judge Abrams explained in *Wynn*, "[t]he claim on the Cheez-It[s] box in [*Mantikas*]—'made with whole grain'—was an express claim about ingredients, and one that strongly suggest[ed] that the crackers were made predominantly or exclusively with whole grain."  2021 WL 168541, at *4.  The same was true in *Sharpe*, where the labeling advertised the product as being "*Made With* Aged Vanilla."  *See id.* (quoting *Sharpe*, 481 F. Supp. 3d at 101).  As discussed above, however, the SDNY Vanilla Cases have concluded that the word "vanilla," when used to describe a product such as ice cream or almond milk, describes a flavor, not a particular ingredient.  Here too, the words "vanilla bean" are used to modify the words "ice cream," thereby specifying the flavor consumers can expect.  The Product label does not contain an ingredient claim such as "Made With Vanilla Beans," or "Made From Vanilla Beans," in which case the Court's conclusion would likely be different.  *Cf. Wynn*, 2021 WL 168541, at *4 ("If, like in *Mantikas* and *Sharpe*, [the] [d]efendant's product claimed to be 'made with' vanilla, the result here might well be different.").  In the case of vanilla, which "describes both a taste and an ingredient," *Pichardo*, 2020 WL 6323775, at *4, "[t]he absence or presence of the words 'made with' can make a substantial difference," *Campbell v. Whole Foods Mkt. Grp.*, No. 20-CV-1291, 2021 WL 355405, at *6 n.5 (S.D.N.Y. Feb. 2, 2021).[3]  In the context of the particular label

---

[3] Rather than addressing a vanilla-flavored product, *Campbell* involved a box of graham crackers labeled "Honey Graham Crackers."  *See* 2021 WL 355405, at *1.  Although the word "Graham" refers to whole wheat flour, *see id.* at *5, the whole grain content in the product was allegedly less than 15 percent, *see id.* at *3.  Despite the absence of the words "made with," the court held that the plaintiffs had adequately alleged a misrepresentation.  *See id.* at *5–6.  The court reasoned that where a particular ingredient—such as "graham flour" or "whole wheat flour"—are not "associated with a particular flavor," the "absence of th[e] words ['made with'] is not dispositive."  *Id.* at *6.  As the court explained, "it is reasonable to infer that a reasonable consumer would construe the reference to graham here, like the reference to 'whole wheat' in *Mantikas*[,] as something that the crackers are made with—even if the words 'made with' do not appear on the packaging."  *Id.*  However, it clarified that where, as here, "the relevant term is both an ingredient and a flavor," the "absence or presence of the words 'made with' can make a substantial difference."  *Id.* at *6 n.5.

in this case, the Court concludes that the words "Vanilla Bean Ice Cream" make a representation about the Product's *flavor*, rather than a specific claim about the Product's *ingredients*.

However, even if the Court were to conclude that the Product's label does make a claim about a particular source of the vanilla flavor, the label makes no claim about the predominance of that particular source compared to other sources of vanilla flavoring.  In other words, there is nothing to suggest that vanilla beans are the *only* source of vanilla flavoring, or that the flavor from vanilla beans constitutes a certain percentage of the total vanilla flavor.  *Cf. Barreto*, 2021 WL 76331, at *4 (noting that the product label "[did] not imply or represent [that] the source of th[e] [vanilla] flavor [came] exclusively or predominantly from natural vanilla.").  In this sense, a representation regarding ice cream flavor is distinguishable from a representation about the type of grain used in crackers.  As Judge Caproni explained in *Pichardo*:

> A vanilla product that exclusively uses vanilla extract for vanilla flavor is not healthier—or materially different in any other way—than a vanilla product that uses vanillin from some other natural source.  Unlike whole grain and white flour products, vanilla products are not even divided into those that are flavored exclusively with vanilla extract and those that are not.  Implying that whole grain flour is the dominant ingredient when, in fact, the dominant ingredient is white flour can be misleading because, given the labeling, reasonable consumers would expect a different, healthier product.  In contrast, stating that a protein drink is vanilla flavored when it is, even without clarifying the source of the vanilla, does not mislead because reasonable consumers would expect a vanilla taste, and that is exactly what they get.

*Pichardo*, 2020 WL 6323775, at *4.  Finally, apart from the fact that the Product does not make a representation about the predominance of a certain source of vanilla flavor, "there is good reason to doubt [Plaintiffs'] allegations that a reasonable consumer would find the percentage of authentic vanilla material" in the first place.  *Blue Diamond Growers*, 2020 WL 7211218, at *5; *see also Pichardo*, 2020 WL 6323775, at *6 ("Because the [c]ourt can take judicial notice that the grocery store shelves are stocked with many vanilla-flavored beverages that sell just fine, the

[c]ourt cannot accept the conclusory allegation contained in the [First Amended Complaint] as a well-pled allegation that consumers view the percentage of vanilla taste that derives from vanilla extract to be a material fact that influences consumers' buying habits.").

In any event, Plaintiffs have not alleged that the Product contains *no* flavor from natural vanilla. (*See* FAC ¶ 103 (acknowledging that the "Product contains p-methoxybenzaldehyde . . . , a compound unique to vanilla, which is an indicator the Product contains some [real] vanilla"); *id.* ¶ 104 (conceding that "the Product may contain some real vanilla"); *id.* ¶ 105 ("By using a drop of vanilla extract instead of not using any, [D]efendant can credibly claim its Product has vanilla extract.").) Thus, as in *Steele*, "it is conceded that there is [real] vanilla in the [P]roduct[,] [but] it is claimed to be de minimis." 472 F. Supp. 3d at 50. (*See* FAC ¶ 5 (alleging that "Defendant's Product contains . . . a de minimis amount of real vanilla").) But as in *Steele*, "[n]o objective facts in this respect are pled." 472 F. Supp. 3d at 51. Relying on the results of their GC-MS Analysis, Plaintiffs allege that, of the four "main" chemical compounds that are found in vanilla beans in small amounts (the "marker compounds"), only one—vanillin—was detected in the Product, at 19.178 parts per million ("PPM"). (*See* FAC ¶¶ 95, 102.) This was also the case in *Steele*, where the GC-MS Analysis detected vanillin (0.787 PPM) but none of the other marker compounds. *See* 472 F. Supp. 3d at 51. There, as here, Plaintiffs "argue[d] [that] this means there is too little vanilla bean extract in the ice cream, and the flavoring must come from non-vanilla bean sources." *Id.* (*Cf.* FAC ¶ 106 (arguing that "[D]efendant cannot label the Product as 'vanilla bean ice cream' because it fails to contain sufficient flavor from [real] vanilla to characterize it").) As in *Steele*, however, "that is not a self-evident conclusion." 472 F. Supp. 3d at 51. As Judge Stanton explained in that case, "[t]he fact that the analysis disclosed only the vanillin may simply show that the test was not sensitive enough to detect the markers with

16

smaller profiles in the bean." *Id.*[4]  Or it may indicate "that the vanilla flavor derives solely from vanilla extract," *id.* at 51, which is derived from real vanilla, (*see* FAC ¶¶ 4, 105).  "What is needed," Judge Stanton observed, "is to test[] not for the universe of the ice cream's contents, but specifically for the presence of the particular chemical markers."  472 F. Supp. 3d at 51.  The Court here concludes, as Judge Stanton did in *Steele*, that "[t]he test performed under [P]laintiffs' instructions is as inapplicable to this [A]ction as are the federal specifications for ice cream flavorings."  *Id.*

Finally, to the extent Plaintiffs argue that the Product label is misleading because it fails to disclose that the vanilla flavor is enhanced by artificial flavors, (*see* FAC ¶¶ 4, 139, 154), "the use of the term vanilla [does not] imply that there are no other flavoring ingredients."  *Pichardo*, 2020 WL 6323775, at *5 (rejecting the argument that a product label was misleading because it failed to disclose that the vanilla flavor was bolstered by other ingredients); *see also Sarr*, 2020 WL 729883, at *4 (finding that a label containing the words "Real . . . Butter" was not misleading because the product contained real butter, and a reasonable consumer would not interpret those words as implying that there were no additional fats); *Kennedy v. Mondelez Glob. LLC*, No. 19-CV-302, 2020 WL 4006197, at *13 (E.D.N.Y. 2020) (concluding that the words "made with real honey" were not misleading, despite the fact that honey was not the *only* sweetener).  Thus, the Court likewise rejects this theory of misrepresentation.

For the reasons stated above, Plaintiffs fail to adequately allege a material misrepresentation under GBL §§ 349 and 350, and thus, this claim is dismissed.

---

[4] Of the four marker compounds, vanillin has the highest detectable concentration in vanilla beans (1.3 to 1.7 percent), followed by p-hydroxybenzaldehyde (0.1 percent), vanillic acid (0.05 percent), and p-hydroxybenzoic acid (0.03 percent).  *See Steele*, 472 F. Supp. 3d at 51. (*See also* FAC ¶ 95 (stating same).)

### 2.  Plaintiffs' Remaining Claims

Plaintiffs' remaining claims—negligent misrepresentation, breaches of express warranty, the implied warranty of merchantability, and the Magnuson Moss Warranty Act, fraud, and unjust enrichment—are based on the assertion that Defendant's Product is materially misleading for reasons already discussed in connection with the GBL claim.  "Because the Court has already determined that [Plaintiffs] ha[ve] failed to allege that the [P]roduct's labeling would be likely to deceive or mislead a reasonable consumer, these causes of action are also dismissed for the reasons already stated."  *Barreto*, 2021 WL 76331, at *6; *see also Blue Diamond Growers*, 2020 WL 7211218, at *3 (dismissing claims for negligent misrepresentation, breach of express warranty, breach of the implied warranty of merchantability, violation of the Magnuson Moss Warranty Act, fraud, and unjust enrichment because, "if [the] [d]efendant's [p]roduct does not misrepresent the contents of the container as a matter of law, all of [the] [p]laintiffs' claims must be dismissed"); *Wynn*, 2021 WL 168541, at *6 ("[The] [p]laintiffs also assert claims for negligent misrepresentation, breach of warranty, fraud, and unjust enrichment.  These claims, which largely hinge on the same theory of misleading business practices rejected by the [c]ourt above, all fail as a matter of law.").  These claims also fail for additional reasons, which the Court briefly notes.

### a.  Negligent Misrepresentation

A negligent misrepresentation claim under New York law requires that the plaintiff plead: "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information."  *Wynn*, 2021 WL 168541, at *6 (quoting *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1109 (N.Y. 2011)); *see also Barreto*, 2021 WL

76331, at *7 (same).  "To plead a special relationship, plaintiffs must show that they were a

'known party or parties.'"  *Barreto*, 2021 WL 76331, at *7 (quoting *Sykes v. RFD Third Ave. 1

Assocs., LLC*, 938 N.E.2d 325, 326 (N.Y. 2010)).  "Being 'one of a class of potential' recipients

of a statement will not suffice."  *Id.* (quoting *Westpac Banking Corp. v. Deschamps*, 484 N.E.2d

1351, 1353 (N.Y. 1985)).  Here, apart from the fact that Plaintiffs fail to adequately plead that

Defendant's Product conveyed incorrect information, their negligent misrepresentation claim

fails for the additional reason that they have not alleged the existence of a special or privity-like

relationship.  *See Wynn*, 2021 WL 168541, at *6 (same); *Barreto*, 2021 WL 76331, at *7

(dismissing negligent misrepresentation claim where the plaintiff did "not allege that she had any

contact with [the defendant] or its representatives, nor [did] she allege that she purchased the

product directly from [the defendant]"); *see also Sec. Investor Protection Corp. v. BDO Seidman

LLP*, 222 F.3d 63, 74–75 (2d Cir. 2000) (requiring that a known party be "part of an identifiable,

particularized group rather than 'a faceless or unresolved class of persons'"); *Segedie v. Hain

Celestial Grp., Inc.*, No. 14-CV-5029, 2015 WL 2168374, at *14 (S.D.N.Y. May 7, 2015)

("Defendant's obligation to label products truthfully does not arise from any special relationship.

There is nothing approximating privity between the parties.").  It is true, as Plaintiffs note, (*see*

Pls.' Opp'n 17), that "a sparsely pled special relationship of trust or confidence is not fatal to a

claim for negligent misrepresentation" so long as the complaint "emphatically alleges" (1) that

the person making the representation "held or appeared to hold unique or special expertise" and

(2) the speaker "was aware of the use to which the information would be put and supplied it for

that purpose," *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168,

188 (2d Cir. 2004) (citations and internal quotation marks omitted).  But "where, as here, a

'special relationship' is nowhere pled, and the allegations with respect to the[se] other [two]

factors are soft, a claim for negligent misrepresentation is dismissible under Rule 12(b)(6)." *Id.*

That is the case here.  Although Plaintiffs allege that Defendant "held itself out as having special

knowledge" in the production and sale of the Product, (FAC ¶ 164), the First Amended

Complaint does not separately allege that Defendant "was aware of the use to which the

information would be put and supplied it for that purpose," *Eternity Glob.*, 375 F.3d at 188.

Plaintiffs' belated assertion in their Opposition Memorandum—that "it is implausible that

Defendant was not aware that consumers would rely upon the representations put on the front

label of its Product," (Pls.' Opp'n 17)—is insufficient to rescue their negligent misrepresentation

claim.

### b.  Breach of Express Warranty and Implied Warranty of Merchantability

Plaintiffs' claims for breach of express warranty and the implied warranty of

merchantability are dismissed for similar reasons.  "An express warranty is an affirmation of fact

or promise made by the seller to the buyer which relates to the goods and becomes part of the

basis of the bargain." *Barreto*, 2021 WL 76331, at *6 (citation and internal quotation marks

omitted).  To adequately state a claim for breach of an express warranty, Plaintiffs must plead

"(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on

this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and

(4) injury to the buyer caused by the breach." *Wynn*, 2021 WL 168541, at *7 (quoting

*Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014)).

Plaintiffs' claim for breach of express warranty fails because they have not adequately pled that

the Product "does not comport with the statements contained on the label." *Id.*; *see also Barreto*,

2021 WL 76331, at *6 ("The express warranty claim fails as [the defendant's] product does not

state it is made exclusively with natural vanilla and a reasonable consumer would not interpret the representation of 'Vanilla Soymilk' to make this claim.").

"A breach of the implied warranty of merchantability occurs when the product at issue is 'unfit for the ordinary purposes for which such goods are used.'" *Twohig*, 2021 WL 518021, at *9 (citing U.C.C. § 2-314(c)). Here, Plaintiffs' claim for breach of the implied warranty of merchantability fails because Plaintiffs fail to allege that the Product was unfit for human consumption. *See Wynn*, 2021 WL 168541, at *7 ("Plaintiffs' claim for breach of implied warranty fails for the additional reason that there is no allegation that the almond milk was unfit for human consumption."); *Barreto*, 2021 WL 76331, at *7 (dismissing claim for breach of implied warranty where there were "no allegations that the soymilk beverage was unfit for the ordinary purpose of such goods, namely, human consumption"). Moreover, "[t]o the extent the [First Amended] Complaint alleges that the [P]roduct does not conform to any promises or affirmations of fact made on the label, [Plaintiffs'] claim[] fails for the same reasons as its express warranty claims." *Barreto*, 2021 WL 76331, at *7; *Twohig*, 2021 WL 518021, at *9 (same).[5]

### c.  Common Law Fraud

"Under New York law, stating a claim for fraud requires alleging (1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent

---

[5] Although the First Amended Complaint also purports to allege a breach of the Magnuson Moss Warranty Act, (FAC ¶¶ 168–78), the Parties have not addressed this claim in their motion papers. "Regardless, Plaintiffs' claim brought under the Magnuson Moss Warranty Act is dismissed because Plaintiffs have not adequately pleaded a cause of action for breach of written or implied warranty." *Twohig*, 2021 WL 518021, at *9 n.8; *see also Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 232 (S.D.N.Y. 2015) ("To state a claim under the MMWA, plaintiffs must adequately plead a cause of action for breach of written or implied warranty under state law.").

to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff." *Wynn*, 2021 WL 168541, at *7 (citing *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997)). To adequately plead fraud, Plaintiffs must meet the particularity requirement in Rule 9(b) of the Federal Rules of Civil Procedure, which "requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 403 (2d Cir. 2015) (citation omitted). Although Rule 9(b) "permits a plaintiff to allege scienter generally, . . . the Second Circuit has 'repeatedly required plaintiffs to plead the factual basis which gives rise to a strong inference of fraudulent intent.'" *Barreto*, 2021 WL 76331, at *8 (quoting *United States ex rel. Tessler v. City of New York*, 712 F. App'x 27, 29 (2d Cir. 2017) (summary order)). In addition to the reasons already discussed, Plaintiffs' fraud claim must be dismissed for failure to plead facts that "give[] rise to a strong inference of fraudulent intent." *Id.* Here, Plaintiffs allege in conclusory fashion that "Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front labels, when it knew its statements were neither true nor accurate and could mislead consumers." (FAC ¶ 183.) As the court held in *Barreto*, such a general, conclusory claim is insufficient to adequately state a claim for fraud. *See* 2021 WL 76331, at *8 (holding that plaintiff failed to allege a claim for fraud where it had alleged that the "[d]efendant's fraudulent intent [was] evinced by its failure to accurately identify the [p]roducts on the front label when it knew this was not true").

### d. Unjust Enrichment

Finally, Plaintiffs' unjust enrichment claim is duplicative of their "core theory of deception, and 'if plaintiffs' other claims are defective, an unjust enrichment claim cannot

remedy the defects.'"  *Id.* (quoting *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012)).  Here, as in *Barreto*, the unjust enrichment claim "is based on the same allegations as [Plaintiffs'] other claims for consumer deception," and thus, this claim must be dismissed as duplicative of the rejected GBL claim.  *Id.*; *see also Alce v. Wise Foods, Inc.*, No. 17-CV-2402, 2018 WL 1737750, at *12 (S.D.N.Y. Mar. 27, 2018) (dismissing unjust enrichment claim based on "a mere regurgitation of those [allegations] made with respect to plaintiffs' . . . claims under the GBL"); *Goldemberg*, 8 F. Supp. 3d at 483–84 (same).

### III.  Conclusion

For the reasons stated above, Defendant's Motion is granted.

Because this is the first adjudication of Plaintiffs' claims on the merits, the First Amended Complaint is dismissed without prejudice.  To the extent Plaintiffs have a good faith basis for filing a second amended complaint, they must do so within 30 days of the date of this Opinion & Order.  Failure to properly and timely amend will result in dismissal of the First Amended Complaint with prejudice.

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 19).

SO ORDERED.

Dated:    March 26, 2021
          White Plains, New York

_____
          KENNETH M. KARAS
          United States District Judge

23